[Sac. No. 5269. In Bank.—April 7, 1939.]

ELI RODMAN, Petitioner, v. THE SUPERIOR COURT OF NEVADA COUNTY et al., Respondents.

George R. Andersen for Petitioner.

Vernon Stoll, District Attorney, for Respondents.

HOUSER, J.—In substance, the essential facts which appear in a petition that has been presented to this court for the issuance by it of a writ of *certiorari* are that in a criminal action that was pending against one Yuen, and others, in the Superior Court of this State, in and for the County of Nevada, in accordance with an order theretofore made by said court, the petitioner herein deposited with the sheriff of that county the sum of $500 cash bail for the sole purpose of insuring the appearance in court of one Circle, who was one of the defendants in the action. Circle did appear at the trial of the action and was convicted of the commis-

sion of the offense of which he had been charged. Thereafter, in due course, on his appearance before the court for the special purpose of having sentence pronounced against him, and before judgment was so rendered, in part the following colloquy occurred in open court between the judge of the court and Mr. Andersen, who was counsel for defendant Circle, and who also represented the several bondsmen:

"Mr. Andersen: Before the Court formally pronounces judgment, I desire to have the bail exonerated, your Honor. The Court: Mr. Circle,— Mr. Andersen: Will the Court direct a minute order to that effect? The Court: Your motion is not made in the proper form. Mr. Andersen: Representing the bondsmen, I desire, on their behalf, to have the bail exonerated. The Court: That is not a proper motion, not in the proper form. . . . "

After pronouncing judgment in the action, the judge continued as follows: "It is further ordered, that the County Clerk, in respect to each defendant, apply the money on deposit as bail in satisfaction of each of said fines, and refund the surplus, if any, to the defendants or other person who made such deposit, as provided in Section 1297 of the Penal Code of California. The defendants are ordered into custody."

Thereupon the following respective statements and conduct occurred in open court:

"Mr. Andersen: May I direct the Court's attention to the order of the Court made with respect to the bail in this of *People* v. *Yuen* case? Your Honor is probably not familiar with the amendment to section 1297 of the Penal Code, under which the Court would probably want to amend its own order. The Court: With respect to Yuen? Mr. Andersen: With respect to Yuen and all of the defendants. The bail receipts here are not in the name of any of the defendants. The Code provides that in any such case the bail may not be forfeited. The Court: I have the latest Code in there (indicating the Judge's chambers). Mr. Andersen: I think if the Court would look at it, the Court would change the order. The Court: I believe it provides that the surplus is to be returned. Mr. Andersen: None of the bail will be forfeited, your Honor. The Court: I will look at that. Mr. Andersen: May we do that now? The Court: Very well, we will take a recess. [Thereupon, the Court, the District Attorney and Mr. Andersen retired to the Judge's chambers,

thereafter returned and the following proceedings ensued:] The Court: There may be some merit in your contention with reference to the amendment of Section 1297, Mr. Andersen, but I will not decide that at this time; that is, with reference to the forfeiture of the money.''

The lawfulness of the order, by which the fine that was imposed upon the defendants in the criminal action was directed to be paid out of the money that had been deposited by third persons as bail for the appearance in court of the said defendants, is the subject of these proceedings.

However, preceding a determination of the question of whether the trial court was possessed of authority to direct the disposition of the money that had been deposited by a bondsman as bail for the appearance of Circle, it would seem advisable that attention should be directed to each of several minor points which has been advanced by the respondents:

■ It may be remembered that at the time when the petitioner herein presented to the trial court his request or motion that the bail be ''exonerated'', the response which was made thereto by the trial judge was that the ''motion is not made in the proper form''. That was the sole reason assigned by the trial court for its refusal to ''exonerate'' the bail; and, in this proceeding, the respondents re-assert that position, and urge that it should prevail as a sufficient reason for a refusal of this court to make an order by which an annulment of the order here in question would result. In that connection, it first may be not inappropriate to again suggest the application of the rule that in the administration of justice, substance, rather than mere form, should be regarded. In this state, the common-law forms of procedure have been either abandoned or, at least, have suffered a considerable modification in their strictness, with the consequence that their importance even in matters of pleading has been greatly decreased; and, with reference to statutory procedure, by constitutional provision, ordinarily no error ''as to any matter of pleading, or . . . procedure'' constitutes a sufficient ground even for the granting of a new trial. (Sec. 4½, art. VI, Const.) ■ Other than that the request or the motion should have been preceded by an offer on the part of the bondsman to surrender the defendant into court, no suggestion is here made as to the

"form" which should have been observed. (*Mundell* v. *Wells*, 181 Cal. 398 [184 Pac. 666, 7 A. L. R. 383]. See sec. 1300, Pen. Code.) But, obviously, the fact that the defendant already had been brought to trial, had been convicted of the offense of which he had been charged, and at the instant when the motion was made was before the court for the very purpose of having judgment pronounced against him, should have been considered the equivalent of a surrender by the bondsman of the person of the defendant. Besides, it would seem apparent that, other than the implied requirements which may be indicated by the provisions of section 1300 of the Penal Code, had any particular "form" ever been prescribed, either by statute or by judicial direction, a fair regard for the rights of the applicant for "exoneration" should have prompted an indication of its existence, together with the giving of a reasonable opportunity to the bondsman to amend his application, or otherwise to avail himself of the use of the required procedure. It is manifest that to permit a mere failure on the part of the bondsman to perform that which either might or would have been readily done by him, or that which, in substance, might have been regarded as an idle act, to defeat his asserted rights in the premises, would give rise to a sad commentary on the vaunted procedure respecting the administration of substantial justice. At any rate, this court cannot knowingly lend its official sanction in such a cause.

On the part of the respondents, it also is urged that at the time when the order here in question was made, no evidence was introduced in behalf of the bondsman "showing that the bail money had actually been deposited by third parties", and that as a consequence thereof, "the court could do nothing other than order the forfeiture". In that regard, it need only be said that such contention is lacking in substantial merit. Prior to the institution of the instant proceeding, the record of the proceedings herein discloses the undeniable fact that no question with respect to the facts was ever suggested either by the judge of the trial court or by any interested person. Apparently everyone that was at all connected with the matter was thoroughly conversant with all the facts; and, as hereinbefore has been stated, the only ground upon which reliance was placed by

the trial judge for his refusal to make the requested order was that the motion was "not made in the proper form".

 Regarding the merits of the motion, it appears that in criminal cases, with respect to "deposit instead of bail", section 1297 of the Penal Code provides as follows:

"When money has been deposited, a receipt shall be issued in the name of the depositor. If the money remains on deposit at the time of a judgment for the payment of a fine, the county clerk must, under the direction of the court, apply the money in satisfaction thereof, and after satisfying the fine and costs, must refund the surplus, if any, to the defendant. *If the person to whom the receipt for the deposit was issued was not the defendant, the deposit after judgment shall, upon surrender of the receipt, be returned to the holder thereof.*" (Emphasis added.) The italicized portion of the law just quoted constitutes a part of an amendment that was enacted by the legislature in 1937. Furthermore, section 1302 of the Penal Code provides as follows:

"If money has been deposited instead of bail, and the defendant, at any time before the forfeiture thereof, surrenders himself to the officer to whom the commitment was directed, in the manner provided in the last two sections, the court must order a return of the deposit to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant upon the production of the certificate of the officer showing the surrender, and upon a notice of five days to the district attorney, with a copy of the certificate."

From a casual reading of those statutes, it would seem manifest, considering the facts of the instant case, that the deposit not having been made by the defendant, but by a bondsman, eventually the latter was entitled to have his money returned to him. However, it is contended by the respondents that the provisions of section 1295 of the Penal Code qualify that which would seem to be the plain language of section 1297. But this court is unable to agree with the respondents in that regard. All that the pertinent language of section 1295 purports to provide is that after a defendant has been admitted to bail, either he or any other person may deposit the required amount of the cash bond with the clerk of the court; thereupon "upon delivering to the

officer in whose custody defendant is a certificate of the deposit, defendant must be discharged from custody".

The decision in the case of *Mundell* v. *Wells*, 181 Cal. 398 [184 Pac. 666, 7 A. L. R. 383], which is relied upon by the respondents in support of their position, was rendered long before the amendment was made to section 1297, and has application to the particular facts of that case and the law as it existed at the time when the said decision was rendered. In the face of the plain provisions of the statute as amended, it is clear that any declaration of the law contained in the cited case that ordinarily might be appropriate to the situation here disclosed, but which declaration of the law is in conflict with the express terms of the amended statute, has no controlling force in the present controversy.

▉ Finally, as an objection to a determination of the legality of the order in question, the respondents herein urge the point that a "writ of review is not a proper proceeding in this case". In that regard, the respondents contend that, even if it be admitted that section 1297 of the Penal Code requires the trial court to pay the deposited bail to the person holding the receipt therefor, *certiorari* will not lie to review the action of the trial court in erroneously ordering it applied in satisfaction of a fine, for the asserted reason that at most the action of the trial court was simply an error in the exercise of jurisdiction and was not in excess of its jurisdiction. In other words, the respondents rely on the well-settled rule that before a writ of *certiorari* may be granted, it must be shown that the inferior court acted in excess of its jurisdiction, and that the writ may never be granted where the inferior court merely commits error in the exercise of its jurisdiction (see cases collected 4 Cal. Jur., sec. 4, p. 1022). However, an examination of the facts of the instant case leads to the conclusion that a proper situation is presented which will justify the issuance of the writ.

Primarily, it should be noted that courts possess no inherent power to appropriate to the payment of a fine that has been imposed on a defendant, any money that theretofore may have been deposited by a bondsman for the purpose of insuring appearance of the defendant for trial in the action in which such fine has been imposed. Such authority is of purely statutory origin, and necessarily is limited by the terms of the enabling statute. (*Isbell* v. *Bay*

*Circuit Judge,* 215 Mich. 364 [183 N. W. 721, 16 A. L. R. 971].) In that connection, it also may be observed that: "In the absence of a statute permitting it, the authorities have no power to receive or order a deposit of money by a prisoner in lieu of bail"; (44 L. R. A. (N. S.) 1150) and that: "In the absence of express statutory authorization a judicial officer, or other officer empowered to admit to bail, persons accused of crime, has no right to accept a deposit of money in lieu of bail or as a substitute for a recognizance" (29 A. & E. Ann. Cas. 1913D, 194; see, also, *Snyder* v. *Gross,* 69 Neb. 340 [95 N. W. 636, 5 Ann. Cas. 152].)

If it be assumed that the statute—section 1297 of the Penal Code—limited the court's authority to paying the deposited bail to the petitioner, it is obvious that such statute limits the jurisdiction of the court, as that term is used in the rule hereinbefore stated, and that the court's action in ordering the bail applied in satisfaction of the fine was in "excess" of jurisdiction, and was not merely an error in the exercise thereof. An examination of the numerous cases which deal with this problem impels the conclusion that some confusion exists with reference to what constitutes an excess, and what constitutes an error, in the exercise of jurisdiction. However, it seems well settled (and there appears to be no case holding to the contrary) that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction, and *certiorari* will lie to correct such excess. In *Spreckels S. Co.* v. *Industrial Acc. Com.,* 186 Cal. 256 [199 Pac. 8], the point is discussed at some length. There the statute specifically designated what award the commission should make to partial dependents in the event of the death of an employee. The commission made an award larger than that permitted by the statute. This court held that such action could be corrected by *certiorari.* At page 260 it is stated: "The difficulty arises from the different shades of meaning which the word 'jurisdiction' has. As sometimes used, it means simply authority over the subject matter or question presented. In this sense the commission undoubtedly had jurisdiction in this case and its award was not without jurisdiction on its part. But the word is frequently used as meaning authority to do the particular thing done, or, putting it conversely, a want of jurisdiction fre-

quently means a want of authority to exercise in a particular manner a power which the board or tribunal has, the doing of something in excess of the authority possessed. A good illustration of a want of jurisdiction of this latter sort is the imposing by a court upon a person convicted of crime of a sentence in excess of that permitted by the statute. The court had jurisdiction to sentence the convicted person, but it did not have jurisdiction to impose a sentence not permitted by law, that is, it acted in excess of its power in so doing. Such excesses of jurisdiction can be reviewed on *certiorari*. The code section so provides (Code Civ. Proc., sec. 1068) . . . Upon the facts found the statute prescribed the amount to be allowed as a death benefit, and the commission in allowing a different amount rendered an unlawful award and one in excess of its authority.''

Substantially the same rule was announced in *Baker* v. *Superior Court,* 71 Cal. 583 [12 Pac. 685]. In that case a trial court purported to extend a litigant's time to plead for a period in excess of the time authorized by the code. With reference thereto this court stated (p. 584) : ''It is clear that the order, so far as it attempted to extend the time to plead more than thirty days, was an excess of jurisdiction.'' It was held that *certiorari* was the proper remedy to correct the action of the trial court. (This rule was also reiterated in *Gibson* v. *Superior Court,* 83 Cal. 643 [24 Pac. 152] ; see, also, *Carpenter* v. *Superior Court,* 75 Cal. 596 [19 Pac. 174] ; *Zierath* v. *Superior Court,* 35 Cal. App. 788 [171 Pac. 112].)

The very point involved in the instant case was considered by the District Court of Appeal in *Hudson* v. *Police Court of Oakland,* 39 Cal. App. 149 [178 Pac. 172], a case arising, incidentally, before the recent amendments had been made to Penal Code, section 1297. In that case, after bail deposited by a third person had been ordered applied to the satisfaction of a fine, the third person sought to have the action of the trial court reviewed by *certiorari*. It was held (p. 150) : ''that that part of the judgment of the judge of the police court which we are asked to annul was beyond its jurisdiction, and it is therefore ordered that it be annulled as prayed in the petition.''

From the foregoing it follows that, since the statute herein involved limits the power of the trial court, the action of that court contrary to such limitation was in excess of its

jurisdiction, and that *certiorari* is the proper remedy to secure a review of such action.

The order in question is annulled.

Edmonds, J., Curtis, J., Langdon, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.